## The Mabel Comeaux.[1]

### County v. The Mabel Comeaux. [1]

*(Circuit Court, E. D. Louisiana.   June 27, 1885.)*

1. ADMIRALTY LAW—CONTRIBUTORY NEGLIGENCE.
    The common-law doctrine of contributory negligence does not prevail in the admiralty to the extent of denying all relief to one whose negligence may have contributed to his injury.

2. COLLISION—POSITION OF MASTER.
    It is not fault that the master of a steam-boat was not on the hurricane deck, his post of duty, at the time of a collision, when it appears that he was at dinner and the mate was on watch.

Admiralty Appeal.

*Emmet D. Craig,* for libelant.

*Thomas L. Bayne* and *George Denegre,* for claimant.

PARDEE, J.   This is a suit brought by libelant, Melvina County, on her own behalf, and on behalf of her minor children, (whose names are set forth in the libel,) to recover $4,000 damages alleged to have been suffered by them through the death of Warren County, husband of Melvina County, and father of the other libelants; his death, it is alleged, having occurred through negligence of the officers of the Mabel Comeaux.

From the evidence in the case the facts appear to be, substantially: That Warren County, September 16, 1884, was employed upon a coal barge lying in the Mississippi river at the foot of Harmony street, in the city of New Orleans, and at 12 o'clock left the barge in a skiff for the purpose of going ashore to get dinner; that he rowed ashore, got his dinner, placed it in the skiff, and then started back to the coal barge, which was lying at the foot of Harmony street, just above several grain elevators which projected out into the river somewhat beyond the coal barge upon which he was employed; that the time at which he re-entered his skiff and commenced to row back towards the barge, the river for some distance below him was free from obstructions, so that, had he looked down the river he could have seen some three or four hundred yards down without trouble; that the steamer Mabel Comeaux, being then upon one of her regular trips up the Mississippi river, was at the time in the neighborhood of Washington street, some four or five blocks below the elevator, and in full view; that, in order to reach the coal barge, it was necessary for County, after rowing some distance up the river along the shore, to go further out into the river and around the elevators; that he saw, or ought to have seen, the Comeaux during the whole time, but seemingly paid no attention to her; that it was and is a common occurrence in the city of New Orleans for skiffs to row on the river, and go out whenever

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

a steam-boat passes for the purpose of riding over the swells in the wake of the steam-boat, and these skiffs are familiar sights to all pilots; that the pilot and mate of the Comeaux, who were on watch, (the master of the Comeaux being at dinner,) saw County in his skiff when they were about five or six hundred yards distant from him, but it caused no uneasiness, because a familiar and usual sight, and because he was in no danger, being too near the shore and too far out of the track of the Comeaux to make his presence a matter of uneasiness, and the Comeaux continued her course in the usual path pursued by her and other steam-boats going up the river, (which runs closely to the city bank of the river in order to avoid the strong current;) and that County was in no danger from the Comeaux until, having reached the stern of the elevator at foot of Harmony or Ninth street, he attempted to shoot out into the river and around the elevator, in doing which he went further out than was necessary, and directly ahead of the Comeaux; that the steam-boat was then quite close to him, and as soon as the pilot saw this, and that County was exposing himself to danger, gave the signal to back, reversed his engine, and did all in his power to stop the headway of his boat and avoid any accident, and was so successful in this, and the headway of the Comeaux was so well checked, that she struck the skiff very lightly, did not break in the sides, or even capsize it.

When County pulled out around the elevator and in front of the Comeaux, he was about 60 yards ahead, and he still had time to pull directly across the bows of the Comeaux to the outside, or even to have backed his skiff to the inside out of danger; but it appears that the rowing apparatus of his boat was not in good order, and that he lost his presence of mind, for he pulled "first one way and then another," (in the words used by one of libelant's witnesses,) then threw down his oars, hallooed to the steam-boat to stop, and then jumped overboard from the stern, going inside towards the shore, while the skiff, thus shoved further out, floated down against the bows of the Comeaux.

County swam for some distance in and down the river, either not seeing or neglecting a plank thrown overboard from the Comeaux, when, for some reason not appearing, he suddenly sank and was drowned. It appears that the Comeaux was not steered further out to avoid County's skiff, when he was discovered in front, because of a skiff still further outside, in which a man was fishing, which would have thus been run down.

It seems clear, from the facts as found, that the conduct of County was reckless and careless, and contributed to the circumstances which resulted in his death; and this, too, without holding him responsible for his act of jumping overboard, when he undoubtedly considered himself in extreme peril. But, as the common-law doctrine of contributory negligence does not prevail in the admiralty to the extent of denying all relief to one whose negligence may have contributed to

his injury, the question still remains as to whether the Mabel Comeaux was in fault.

The learned proctor for the libelant urges that the Comeaux was in fault because her master was not on the hurricane deck, at his alleged post of duty. It seems that the master was at dinner, and the mate was on watch. No authority requiring the master to be on the hurricane deck is cited, and no custom to that effect is proved. And as the pilot and mate both saw County when he pulled into danger, and took all effective measures to stop the headway of the boat, the master's absence from the hurricane deck seems to have been no injury to County, nor does it appear that his presence there would have been any benefit.

It is further urged that the Comeaux was in fault in hugging the shore too closely, and it is claimed that her pilot was negligent in not keeping further out. The proof is conflicting as to the exact distance the Comeaux was outside of the elevator. Claimant's witnesses put her at least two widths out, while libelant's evidence gives her various distances much nearer, down to 15 feet. I think the weight of all the evidence is in favor of about two widths distance; but this point loses materiality, because other evidence shows that the Comeaux was pursuing the usual and customary track.

It is further urged that the rules governing steam-vessels when approaching sailing vessels should be applicable to steam-boats in approaching skiffs. This may be granted for this case. One of the best settled of those rules is that the sailing vessel must hold its course, and not suddenly change and run into danger. A sailing vessel that changed its course and run across the bows of a closely approaching steamer, and, having got directly in the way, should down all sail and wait to be smashed, would not be allowed damages if collision resulted.

I recognize this as a case of hardship for the libelants, but I cannot say from the evidence that the Comeaux was in fault, and if I should determine that libelants' hardships entitled them to some relief from the owners of the Comeaux, I could only do so by rejecting evidence that really strikes me to be not only credible but true. The judge of the district court evidently took the same view of the case, and his judgment must be affirmed. A decree will be entered dismissing the libel. Neither party, however, are to recover costs.